*In re* ADOPTION OF D.A. *et al.,* Minors (N.H. *et al.,* Petitioners-Appellants, v. A.A., Respondent-Appellee).

Second District No. 2—91—0092

Opinion filed December 4, 1991.

74

Gitlin & Burns, of Woodstock (H. Joseph Gitlin, of counsel), for appellants.

Thomas W. Hunter, of Barrington, for appellee.

JUSTICE DUNN delivered the opinion of the court:

Petitioners, N.H. and V.H., appeal from an order of the circuit court of McHenry County denying their petition to adopt three minor children born during V.H.'s prior marriage to respondent A.A. Petitioners argue that the trial court's order was against the manifest weight of the evidence and that the court employed an improper standard in making its ruling. We reverse and remand.

V.H. and A.A. were married in 1978. Their three children, D.A., N.A., and K.A., were born in 1979, 1981, and 1982, respectively. Shortly after K.A. was born, V.H. filed a petition for dissolution of marriage in the circuit court of Cook County. That court issued a judgment for dissolution of marriage on February 2, 1983. Under the terms of the judgment, A.A. was to pay $100 per week in child support and to receive reasonable visitation rights. V.H. and N.H. were married on August 24, 1988.

On January 24, 1990, V.H. and N.H. filed a petition to adopt the three children in the circuit court of McHenry County. They alleged in the petition that A.A. was an unfit parent because he had deserted the children (see Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(c)) and had failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children (see Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(b)). They subsequently amended the petition to add abandonment of the children (see Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(a)) as a further ground.

■ The trial on the petition for adoption commenced on September 27, 1990. Our supreme court has held that, under circumstances such as those present in this case, trial courts must undertake a two-step process in ruling on adoption petitions. (*In re Adoption of Syck* (1990), 138 Ill. 2d 255, 276.) The first step is to determine whether the parent whose parental rights petitioners are seeking to terminate is unfit. (*Syck*, 138 Ill. 2d at 276.) At this stage it is the parent's past conduct which is under scrutiny; evidence of whether allowing the adoption would be in the children's best interests is not to be considered. (138 Ill. 2d at 276.) If the court determines that petitioners have met their burden of establishing by clear and convincing evidence the existence of one or more grounds for unfitness, it must then determine whether termination of parental rights and allowance of the adoption petition would be in the children's best interests. 138 Ill. 2d at 277.

In accordance with *Syck*, the trial court bifurcated the trial so that the question of A.A.'s alleged unfitness would be considered during the first part of the trial. A.A. and V.H. were the only witnesses

to testify. The following facts were brought out in either their testimony or the exhibits admitted into evidence.

A.A. saw the children with some degree of regularity between the 1983 dissolution of his marriage to V.H. and July 1985. V.H. would usually take the children to the Four Coins Restaurant in Wauconda, A.A.'s place of employment, so he could see them. The regular visitation ceased, however, after an incident that took place on July 17, 1985, in the restaurant parking lot. According to V.H., they had an argument concerning his failure to make child support payments and notices he had received from the Department of Public Aid concerning the late payments. At one point A.A. threatened to kill her. A Wauconda police officer who was standing nearby interceded and told A.A. to calm down. A.A. denied making any such threat to V.H. Instead, he testified that during the argument in question, V.H. stated that she did not want any more money from him and did not want him to see the children.

According to V.H., A.A. did not see the children at all from the time of the July 17, 1985, incident until late 1989. A.A. testified that he did visit with the children between one and four times in late 1985 and 1986. He stated that he also saw the children a few times by following them to school. A.A. claimed that he tried to call V.H. about visitation a few times after the July 1985 incident in the Four Coins parking lot but was only able to reach her answering machine. The machine played a song and then disconnected the call without enabling him to leave a message. V.H. denied ever having an answering machine during the relevant period. A.A. further testified that he did not go to V.H.'s apartment to request visitation because he feared she would call the police.

V.H. further testified that she did not ever speak to A.A. on the phone after the July 1985 incident although she tried to call him four or five times at the Four Coins restaurant. Each time she was told that A.A. was no longer working there. V.H. also stated that she contacted the Cook County Child Support Bureau once or twice during this period because A.A. was far behind in his support payments. The Bureau was unable to locate him.

The parties agree that when A.A. did exercise his visitation rights he seldom saw his daughter K.A. A.A. stated that this was because V.H. did not want him to see her. V.H. testified, however, that A.A. would not see K.A. because he would not acknowledge being her father. According to V.H., the day K.A. was born, A.A. left the hospital in anger because he did not believe he was capable of fathering a baby girl. He did not return to the hospital. When K.A. returned

home several days later, A.A. stated that someone else must have been K.A.'s father.

A.A. stated that he left the hospital on the night K.A. was born only because there was a lot of blood around and this disturbed him. He testified that he returned to the hospital the next day to see V.H. and K.A. A.A. admitted stating to V.H. that K.A. might not be his daughter but testified that he made this accusation because of V.H.'s behavior.

Records from the clerk of the circuit court of Cook County show that at the time of trial, A.A. was behind in his child support payments by more than $30,000. According to the records, A.A. made no payments from May 31, 1985, through July 25, 1987. Early in 1985 V.H. began to receive public aid. A.A. testified that at one point he called the Department of Public Aid and asked that payments to V.H. be stopped. According to A.A., he made this request because he would have a better chance to see his children if she had been more dependent upon his child support payments.

A.A. made $1,150 in child support payments in 1987 when his total income was $4,376, and $1,350 in 1988 when his income was $15,159. Although his income increased to $25,173 in 1989, he made no support payments that year. V.H. stopped receiving public aid payments in 1988 after moving in with N.H., whom she married later that year.

A.A. testified that he consulted with his family's attorney, a man named Cardaras, sometime in 1986 with respect to his visitation rights. Cardaras advised him to wait before filing any petition to enforce visitation. A.A. never paid any fees to Cardaras with respect to this matter. After Cardaras died, A.A. retained an attorney named Richard Valentino. Valentino sent V.H. a letter addressed to her post office box. In the letter, which was dated September 2, 1988, Valentino threatened to initiate court action unless V.H. permitted A.A. to see the children.

It is clear from the evidence that A.A. knew where V.H. and the children lived until they moved to McHenry County with N.H. in April 1988. V.H. testified that she did not notify A.A. about the new address because she did not know where he was. According to V.H., she wanted A.A. to visit the children and have a good relationship with them until the fall of 1988, when it was decided that N.H. would try to adopt the children.

On November 15, 1988, A.A. filed with the circuit court of Cook County a petition to enforce his visitation rights. Pursuant to a subsequent order of that court, A.A. saw the children twice during the

Christmas season in 1989. A.A. testified that the children acted in a hostile manner toward him on these occasions. During the second visit, he attempted to give them Christmas presents but the children said they had enough toys and refused to accept them. Other than this one occasion, A.A. did not attempt to send the children any presents or greeting cards after May 1985. He testified that he did not do so because he felt V.H. would not allow the children to see the cards or gifts.

In announcing his ruling the trial judge stated that he did not believe A.A. was a credible witness. The judge also stated that he was reluctant to terminate parental rights on the grounds advanced by petitioners when there was any glimmer of interest on A.A.'s part. The trial court therefore denied the petition without proceeding to the second phase of the bifurcated trial. N.H. and V.H. now appeal.

Petitioners' primary contention on appeal is that the trial court's judgment was against the manifest weight of the evidence. According to petitioners, the trial evidence established the existence of two grounds for declaring A.A. unfit. One is that he abandoned the children (see Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(a)). The other is that he failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children (see Ill. Rev. Stat. 1989, ch. 40, par. 1501(D)(b)).

■ Abandonment is parental conduct which shows an intent to forego parental duties and relinquish any parental rights with respect to the children. (*In re Petition to Adopt Cech* (1972), 8 Ill. App. 3d 642, 644.) Petitioners focus their contentions upon this ground and go on to argue that since the evidence conclusively establishes that A.A. abandoned the children, it also establishes his failure to maintain a reasonable degree of interest, concern, or responsibility as to their welfare. Because we believe the latter ground is dispositive of the case by itself, we choose to focus our analysis upon it rather than abandonment.

■ Every case in which allegations of parental unfitness must be resolved is unique unto itself and must be decided upon its own facts. (*In re Adoption of Syck* (1990), 138 Ill. 2d 255, 279.) Parental rights should only be terminated on the basis of the ground we are considering if there is clear and convincing evidence that the parent has not maintained a reasonable degree of interest, concern, or responsibility as to the welfare of the children. (*Syck*, 138 Ill. 2d at 280.) In making the above determination a court should evaluate the parent's conduct in the context of the circumstances in which it occurred. (138 Ill. 2d at 278.) Additionally, the court should consider the parent's efforts to

show interest in the children or communicate with them and not necessarily the success of those efforts. 138 Ill. 2d at 279.

The trial judge stated that he did not believe A.A. was a credible witness. According to V.H.'s version of events, which the trial judge apparently found more credible, A.A. made no effort to see or communicate with the children for a period of over three years, from approximately July 1985 until September 1988. Prior to that time, he refused to visit with his daughter. Even if some credence is given to A.A.'s testimony, the picture is not much brighter. A.A. testified that he visited with the children between one and four times during the above period. His only other efforts to communicate with the children were a few phone calls which reached V.H.'s alleged answering machine. A.A. did not show up at V.H.'s apartment in an effort to see the children on any other occasions even though he was aware of her address until April 1988. He also did not attempt to send the children any letters, cards, or presents.

Additionally, A.A. made few child support payments during the period in question. In 1989, when his income was substantially higher than it was for any other year following his divorce, he made no payments at all. At one point by his own admission, A.A. tried to convince the Department of Public Aid to stop making payments to V.H. Had the Department complied with A.A.'s wishes, there can be little doubt that the children would have been harmed.

██ The evidence establishes that for a period of over three years A.A.'s efforts to see or communicate with his children were minimal or nonexistent. He provided little financial support for the children and even tried at one point to cut off their primary means of support, public aid. In light of the above, we conclude there was clear and convincing evidence that A.A. failed to maintain a reasonable degree of interest, concern, and responsibility with regard to the welfare of his children and he was therefore an unfit parent. The trial court's contrary conclusion was against the manifest weight of the evidence.

██ In issuing his ruling, the trial judge stated that grounds for unfitness probably existed at one point but the situation had changed because of A.A.'s recent attempts to enforce his visitation rights. In our view, this logic is unsound and could lead to undesirable consequences. The trial court's approach could permit parents who have been severely abusing or neglecting their children for lengthy periods of time to avoid a finding of unfitness by claiming the long-term pattern of abuse or neglect had recently ceased. We hold therefore that, in cases involving lengthy periods of objectionable conduct such as the case at bar, departure from the objectionable conduct does not elimi-

nate the existence of grounds for determination that a parent is unfit. Instead, it is a factor that may be considered during the second phase of the bifurcated trial in determining whether allowing the adoption petition and terminating the parental rights of one parent would be in the best interests of the children.

In light of our holding, the second phase of the bifurcated hearing must be held to determine whether allowance of the adoption petition and termination of A.A.'s parental rights would be in the best interests of the children. We therefore remand the cause to the circuit court of McHenry County for that purpose. The court may consider evidence concerning the relationship between the children and A.A. since its prior judgment was entered as well as all other relevant evidence.

Reversed and remanded.

WOODWARD and GEIGER, JJ., concur.